FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 FEB 28  AM 9: 12

STEPHAN HARRIS, CLERK
CASPER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| GEORGE JAMES, | |
| Plaintiff, | |
| vs. | Case No. 2:16-CV-0144-SWS |
| MACHOL & JOHANNES, LLC, and JANAE RUPPERT, individually, | |
| Defendants. | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' *Motion for Summary Judgment* (ECF No. 15).   The Court, having considered the briefs and materials submitted in support of the motion and Plaintiff's opposition thereto, and being otherwise fully advised, FINDS and ORDERS as follows:

### UNDISPUTED FACTS

1.     Defendant Machol & Johannes, LLC ("Machol") is a collection law firm based out of Colorado with additional offices located in Washington State, Oregon, New Mexico, Wyoming, Utah and Oklahoma.   Machol represents clients in the fields of collection, bankruptcy, and creditor rights.   (Ruppert Aff. ¶ 3.)

2.     Defendant Machol is a debt collector as defined under the Fair Debt Collection Practices Act ("FDCPA").

3.      Defendant Janae E. Ruppert is a licensed attorney in the State of Wyoming and the State of Colorado employed by Machol.  Ms. Ruppert is a debt collector as defined under the FDCPA. *Id.* ¶ 2.

4.      Machol frequently represents its client, Capital One Bank (USA), N.A. ("Capital One") in the legal collection of outstanding credit card debts in Wyoming. *Id.* ¶ 4.

5.      Plaintiff, proceeding pro se, is a consumer as defined under the FDCPA. There have been three civil legal actions brought against Plaintiff by Defendants' client Capital One. *Id.* ¶ 19.

6.      On or about February 15, 2016, Capital One placed an account in Plaintiff's name with Machol for legal collections.  Based on Plaintiff's residence in Laramie County, Wyoming, the account was assigned to the Wyoming satellite office. *Id.* ¶ 5.

7.      As required by the FDCPA, on February 16, 2016, Machol sent Plaintiff the required notice of the debt pursuant to 15 U.S.C. § 1692g, which is commonly referred to in the collection industry as the initial demand letter. *Id.* ¶ 6.

8.      In a letter dated March 7, 2016, Plaintiff responded to Machol requesting validation of the debt and further stating, "I refuse to pay this debt because of reasons." *Id.* ¶ 7; ECF No. 16 at 19.  Once verification was completed and provided as required by federal law, collection efforts resumed with no further attempts to communicate with Plaintiff. *Id.* ¶¶ 8-9.

9.      After reviewing Plaintiff's file and documentation provided by Capital One, Defendant Ruppert submitted a *Complaint for Damages* on behalf of Capital One against

the Plaintiff which was filed in Laramie County Circuit Court, Docket No. CV-2016-00931 on April 25, 2016. *Id.* ¶ 10.

10.     Defendants Machol and Ruppert, as litigants filing a civil court proceeding, are subject to the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. § 512(b). The SCRA provides for the temporary suspension of judicial proceedings that may adversely affect the civil rights of personnel on active military duty and reservists who have received call-up orders (but not yet reported for duty). *See id.* § 502.

11.     Capital One has specific policies which it requires of its attorneys in litigation with regard to the SCRA. As part of its requirements, Capital One prohibits its attorneys from filing suit against an Active Military Customer or spouse. (Ruppert Aff. ¶ 12.) In accordance with Capital One's requirements regarding compliance with the SCRA, Machol and its attorneys file a "Servicemembers Civil Relief Act Affidavit" once the suit has been filed indicating that a military verification has been conducted and that due diligence has been performed, evidencing that the Defendant is not covered under the Act. *Id.* ¶ 13.

12.     Accordingly, a SCRA Affidavit was signed on May 5, 2016 by Ms. Ruppert and subsequently filed on May 10, 2016 in Laramie County Circuit Court (Case No. CV-2016-00931), verifying that the Plaintiff is not an active duty servicemember (or covered by the SCRA). *Id.* ¶ 14; ECF No. 16 at 21. A copy of the SCRA Affidavit was served on Plaintiff as the defendant in that action.

13.     Defendants and their clients have adopted policies that go beyond the general requirements of the SCRA. Defendants conduct SCRA checks at multiple stages

3

of account placement and as litigation progresses. For example, Defendants conduct SCRA checks when an account is placed for collections with the firm, prior to drafting the initial complaint, once the legal proceeding has been commenced and a complaint has been filed, when default judgments are requested by the Court, when other judgments are requested by the Court (i.e. Judgment on the Pleadings, Summary Judgment, etc.) and when collection activities continue after judgment. (Ruppert Aff. ¶ 18.)

## STANDARD OF REVIEW

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted).

In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "However, unsupported conclusory allegations do not create a genuine issue of fact." *Id.* (internal quotations and citations omitted). "[M]ere speculation unsupported by evidence is insufficient to resist summary judgment." *Martinez v. CO2 Serv., Inc.*, 12 F. App'x 689, 695 (10th Cir. 2001) (citations

4

omitted).   "Once the moving party has properly supported its motion for summary

judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set

forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v.*

*Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

## DISCUSSION

Plaintiff's Complaint alleges two causes of action against Defendants:   (1)

violation of the FDCPA, specifically 15 U.S.C. § 1692c(c); and (2) violation of "the

Regulations." (Compl. ¶¶ 31, 36.)

A.   *§ 1692c*

The FDCPA provision under which Plaintiff brings his claim provides:

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses
to pay a debt or that the consumer wishes the debt collector to cease further
communication with the consumer, the debt collector shall not
communicate further with the consumer with respect to such debt, except—

(1) to advise the consumer that the debt collector's further efforts are
being terminated;
(2) to notify the consumer that the debt collector or creditor may
invoke specified remedies which are ordinarily invoked by such debt
collector or creditor; or
(3) where applicable, to notify the consumer that the debt collector
or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c (Communication in connection with debt collection).   Plaintiff

contends Ms. Ruppert's May 5, 2016 SCRA Affidavit filed in the state court action

against him, which he erroneously characterizes as a "letter," constitutes a

communication in violation of this provision because it was sent after he notified Defendants of his refusal to pay the debt.

The Court finds the SCRA Affidavit that was filed in the Laramie County Circuit Court by Defendants was not a communication governed by the FDCPA. *See McKnight v. Benitez*, 176 F. Supp. 2d 1301, 1308 (M.D. Fla. 2001) ("the term 'communication' as used in the [FDCPA] does not include a 'legal action' or pleadings or orders connected therewith"). Rather, it was a representation to the court, served upon the opposing party as required by law,[1] that the defendant was "not in the Military Service of the United States and is not entitled to the protection of the Civil Relief Act of 1940 and Amendments thereto." (ECF No. 16 at 21.) While the FDCPA applies to litigating activities of attorneys regularly engaged in consumer-debt collection activity (which may include service of a pleading), *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013), § 1692c(c) excepts from its application an ordinary court-related filing which invokes a specific remedy. As the Supreme Court has explained:

> We agree with [petitioner lawyer] that it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that way-if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy.

---

[1] Plaintiff asserts the Wyoming Rules of Civil Procedure do not require service on a party in default. *See* W.R.C.P. 5(a). However, there is nothing in the record to show Plaintiff was in default at the time the SCRA Affidavit was filed, which was only 15 days after filing of the Complaint for Damages. (*See* Ruppert Aff. ¶¶ 10, 14.)

Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies. We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

*Heintz v. Jenkins*, 514 U.S. 291, 296-97 (1995).

Plaintiff references Ms. Ruppert's inclusion in the SCRA Affidavit that Capital One was seeking "to induce the Court to enter a Default Judgment against [Mr. James]," insisting this was a "tactic being used to try and solicit payment" and thus a communication in violation of the FDCPA. (Compl. ¶ 31.) The Affidavit was a court filing in a pending action establishing that Plaintiff is not subject to the protections of the SCRA. Accordingly, this filing was not a "communication with the consumer" (*see* § 1692c(c)), but rather a representation to the court. Even so, the Affidavit can be fairly characterized as notice to Plaintiff that Capital One intended to "invoke a specified remedy" – default judgment. *See* § 1692c(c)(3). In that regard, the filing of the Affidavit was consistent with, and required by, federal law and Capital One's policies. *See* 50 U.S.C. § 521(b) ("In any action or proceeding [in which the defendant does not make an appearance], the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit.") Further, Plaintiff

has not shown that the contents of the Affidavit are in any way misleading or unfair and unconscionable.[2]

B.    *Wyoming Collection Agency Act*

Plaintiff alleges a "per se violation" of "the Regulations."   (Compl. ¶ 36.) Plaintiff's claim is apparently brought under the Wyoming Collection Agency Act, Chapter 4, Section 6 of the Rules and Regulations of the Collection Agency Board, which Plaintiff asserts creates a state cause of action and private right of action for damages for conduct that violates the provisions of the FDCPA. (*See* Compl. at 1.)   As discussed above, there existing no violations of the FDCPA, Defendants are likewise entitled to summary judgment on Plaintiff's claim under the Wyoming Act.

C.    *Attorney Fees and Costs*

Defendants request attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) which provides: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."   Based on the circumstances and history of this case, the Court so finds.

The account that forms the basis for the lawsuit (and Laramie County Circuit Court Case No. CV-2016-0931) is the third account that Plaintiff had with Capital One that was placed for legal collections with Defendants. (Ruppert Aff. ¶ 19.)   The other two accounts were also filed in Laramie County Circuit Court for collection towards the

---

[2] Although not specifically alleged in his Complaint, Plaintiff's opposition brief argues the Affidavit is false and misleading in violation of 15 U.S.C. § 1692e, and unfair and unconscionable in violation of § 1692f.

end of 2015. *Id.* ¶ 20. Capital One filed Motions for Summary Judgment in both cases and the hearing was scheduled and held in Laramie County Circuit Court on June 6, 2016. *Id.* Plaintiff (who was the defendant in the state court cases) failed to appear at the motions hearing and judgment was entered. *Id.* On the same date, June 6, 2016, Plaintiff filed the present action before this Court.[3]

During the litigation of these two matters, Plaintiff sent several inappropriate e-mails to Defendant Ruppert. (ECF No. 16 at 23-29.) Defendant Ruppert did not respond to any of these e-mails. Plaintiff's e-mail to Ms. Ruppert dated January 4, 2016 was sent after a hearing where Plaintiff's request to compel arbitration was denied. (Ruppert Aff. ¶ 21.) In that e-mail, Plaintiff threatens "[y]ou should get rid of me because all I'm going to do is cause you problems and headaches." (ECF No. 16 at 23.) Plaintiff followed that communication with a series of harassing and inappropriate e-mails regarding matters such as Ms. Ruppert's physical appearance and repeated requests to meet socially.

The record supports a finding that this lawsuit was filed by Plaintiff in an attempt to avoid potential liability on the underlying debts, to retaliate against the Defendants for obtaining judgments in the two earlier cases, and to further harass Defendants. The Court acknowledges one of the main purposes of the FDCPA is "to eliminate abusive debt collection practices." *See* 15 U.S.C. § 1692(e). However, courts have also become more cognizant of the potential misuse of the FDCPA by consumers, especially in light of the bargaining power it can create with the consumer's potential liability.

---

[3] Curiously, two editorial errors in the Plaintiff's Complaint suggest he may have simply copied allegations from an earlier complaint filed on behalf of a relative. *See* Compl. ¶ 33 ("James never communicated a clear waiver of *her* cease communication order.") (emphasis added); Compl. at 8 ("Plaintiff, *Rachel* James hereby demands a trial by jury") (emphasis added).

As a district court in the Second Circuit recently noted "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation." *Jacobson*, 434 F.Supp.2d at 138. The court in *Jacobson* continued:

> Ironically, it appears that it is *often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled.* The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.A.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs....
>
> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $ 400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and-rather than simply pay what he owes-repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).

*Id.* at 138-39 (emphasis added). We echo *Jacobson's* sentiments and concerns. Lamar fits the description of *Jacobson's* hypothetical consumer to a tee, and we will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray."

*Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513-14 (6th Cir. 2007).

Defendants have provided several inappropriate and harassing e-mails from the Plaintiff to Defendant Ruppert, the first expressing Plaintiff's intent to cause "problems and headaches" for Defendants if they pursued the collection action. The evidence further shows that on the date Defendants obtain two judgments against Plaintiff in state court, Plaintiff, in retaliation, filed this lawsuit. These facts weighed together with the lack of merit in Plaintiff's allegation of an FDCPA violation clearly shows that Plaintiff has acted in bad faith in pursuing this matter and for the purpose of harassment.

### CONCLUSION

For the reasons discussed above, Defendants are entitled to judgment as a matter of law. Defendants are further entitled to an award of attorney's fees and costs. THEREFORE, it is hereby

**ORDERED** that Defendants' *Motion for Summary Judgment* (ECF No. 15) is **GRANTED**; it is further

**ORDERED** that Defendants shall, **within fourteen (14) days** after entry of the final judgment in this matter, to file a Bill of Costs and separate request for a specified amount of attorney's fees, supported by detailed and contemporaneous time records, affidavits and other evidence showing the amount of time spent on the case, the hourly fee claimed by the attorney and the hourly fee usually charged by the attorney, if this differs from the amount claimed in the case. Plaintiff shall file any objections to the costs or fee request, supported by affidavits or other evidence, **within fourteen (14) days** after the filing of the Bill of Costs and request for attorney's fees.

Failure to timely file the request for or an objection to the request shall constitute a

waiver thereof unless the Court grants relief from the waiver upon good cause shown.

Dated this 27TH day of February, 2017.

Scott W. Skavdahl
United States District Judge